**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CASE NO.

DAVID LEVY,
individually and on behalf of all others                    **CLASS ACTION COMPLAINT**
similarly situated,

*Plaintiff*,                                                **JURY DEMAND**

v.

DOLGENCORP, LLC, DOLLAR
GENERAL CORP., and DG RETAIL, LLC

*Defendants*,

_____/

**CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiff David Levy ("Plainitff"), individually and on behalf of all others similarly

situated, files this Class Action Complaint against Defendants Dolgencorp, LLC, Dollar General

Corporation, and DG Retail, LLC (hereinafter referred to as "Dollar General" or "Defendants")

and in support states:

**NATURE OF THE CASE**

1.      Dollar General is one of the fastest-growing retailers in the United States. Dollar

General owns and operates brick-and-mortar retail stores throughout the United States. Dollar

General markets, advertises, and sells various products, including, but not limited to pain reliever

and fever reducers, to consumers in its brick-and-mortar stores.

2.      Dollar General distributes its own brand of pain reliever and fever reducer under

the "DG™" label, including Infants' Pain & Fever Acetaminophen — DG™ ("Infants' Products")

and Children's Pain & Fever Acetaminophen — DG™ ("Children's Products"), two well-known

brand-name Over The Counter ("OTC") medications. The Infants' Products and Children's

Products are collectively hereinafter referred to as the "Products."

3.      Acetaminophen, the active ingredient in the Products, can be dangerous, and perhaps even fatal, if taken in large doses. The potential risks associated with acetaminophen overdose terrifies parents and causes them to be extra careful when buying medicine for their children. Dollar General exploits this fear by misleading consumers.

4.      It is the manner in which Dollar General markets, labels, and sells the Products in its brick-and-mortar stores that forms the underlying basis for this action.

5.      Dollar General's advertisements, marketing representations, and labeling of the Products in its brick-and-mortar stores are misleading, untrue, and likely to deceive reasonable consumers. Dollar General purposely packages Infants' Products with distinctive and yellow lettering of the word "infants'" on the product's front-label, while packaging Children's Products with distinctive and yellow lettering of the word "Children's" on the product's front-label. Furthermore, through Dollar General's packaging and labeling of the Products, Dollar General attempts to deceive reasonable consumers into believing that the active ingredient, acetaminophen, in the similar product Infant Tylenol® is *different* than the active ingredient in Children's Tylenol®, when it knows that the active ingredient is the same. Accordingly, Dollar General distributes, markets, and sells the Products in a manner which deceives reasonable consumers into thinking that infants cannot safely take Children's Products.

6.      Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Dollar General markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher price than Children's Products. In stores, the Infants' Products cost approximately three times as much per ounce than Children's Products for the same amount of medicine.

7.      No reasonable consumer would pay approximately three times more for Infants' Products, as compared to Children's Products, unless he or she was deceived into thinking that

infants cannot safely take the Children's Products.

## JURISDICTION AND VENUE

8.      Jurisdiction and venue are properly vested in this Court because a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. Additionally, Defendants have substantial business contacts with the State of Florida, or otherwise avails itself of the markets within Florida, through promotion, sale, marketing and distribution of the Products in Florida, to render the exercise of jurisdiction by this Court proper and necessary. Furthermore, Defendants can be brought before this Court pursuant to Florida's long-arm jurisdictional statute.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

10.      Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction in this district.

## PARTIES

11.      At all relevant times, Plaintiff David Levy, has resided in Green Cove Springs, Florida and purchased the Infants' Products near his residence. Plaintiff has been purchasing Infants' Products for a number of years, and first purchased the Infants' Products in this District for his infant children, and then grandchildren.

12.      During his interactions with the Infants' Products, Plaintiff saw and relied upon the Infants' Products packaging and labeling.

13.      Plaintiff purchased the Infants' Products because he believed that Infants' Products were specifically formulated for infants based on the marketing and labeling of the Infants' Products. Plaintiff believed that the Infants' Products were different than the Children's Products.

If Plaintiff knew that the Infants' Products were no different than the Children's Products, he would not have purchased the Infants' Products or paid a price premium for the Infants' Products.

14.     Had Dollar General not made the false, misleading, and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed, Plaintiff would not have been willing to pay the premium for the Infants' Products, or to purchase the Infants' Products at all. Plaintiff purchased and paid substantially more for the Infants' Products than he would have if he had known the truth about the Infants' Products. The Infants' Products that Plaintiff received were worth less than the Infants' Products for which they paid. Plaintiff was injured in fact and lost money as a result of Dollar General's fraudulent conduct.

15.     Plaintiff would like to purchase "Infants" products from Dollar General in the future and regularly visit retail locations where such products are sold. If Plaintiff knew that the Infants' Products' labels were truthful and not misleading, he would purchase the Infants' Products in the future.

16.     At present, however, Plaintiff cannot purchase the Infants' Products or in good faith provide them to young children or loved ones because they remain unsure as to whether the labeling of the Products is, and will be, truthful and non-misleading. If the Infants' Products were in fact different from the Children's Products, or if it were disclosed that the Infants' Products were the same as the Children's Products, Plaintiff would purchase the Products in the future, and they would be willing to pay a price premium if they were in fact specially formulated for infants.

17.     Defendant Dolgencorp, LLC, upon information and belief, is a wholly owned subsidiary of Dollar General Corporation. Defendant Dolgencorp, LLC is, and at all times mentioned in this Complaint, a corporation organized and existing under the laws of the State of Kentucky with its principal executive offices located at 100 Mission Ridge, Goodlettsville, Tennessee 37072.

18.     Defendant Dollar General Corporation is, and at all times mentioned in this

Complaint, a corporation organized and existing under the laws of the State of Tennessee with its principal executive offices located at 100 Mission Ridge, Goodlettsville, Tennessee 37072. Defendant Dollar General Corporation does business as "Dollar General."

19.     Defendant DG Retail, LLC, upon information and belief, is a wholly owned subsidiary of Dollar General Corporation. Defendant DG Retail, LLC is, and at all times mentioned in this Complaint, a corporation organized and existing under the laws of the State of Tennessee with its principal executive offices located at 100 Mission Ridge, Goodlettsville, Tennessee 37072.

20.     Defendants constitute an integrated enterprise because Defendants' related activities (i.e. jointly owning and operating Dollar General retail stores) performed (either through unified operation or common control) by any person or persons [are] for a common business purpose as that term is defined in the FLSA, 29 U.S.C. § 203(r).

## FACTUAL ALLEGATIONS

21.     Dollar General distributes two different pediatric OTC painkillers – Infants' Products and Children's Products.

22.     Prior to the acts giving rise to this Complaint, liquid acetaminophen marketed for "infants" was only available in 80 mg/0.8 mL or 80 mg/mL concentrations, while liquid acetaminophen marketed for "children" was only available in 160 mg/5 mL concentrations.

23.     The difference in concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, causing them to overdose and, in many cases, suffer significant bodily harm and even death.

24.     Between 2000 and 2009, the U.S. Food and Drug Administration (FDA) received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied to mix-ups involving the two pediatric medicines.

25.     On December 22, 2011, the FDA informed the public that liquid acetaminophen marketed for infants would now only be available in 160 mg/5 mL concentration in order to prevent confusion and reduce the risk of accidental acetaminophen overdoses.

26.     Since then, the only differences in liquid acetaminophen marketed for infants versus children have been the price and dosing instrument included with the product (i.e. Defendant's Infants' Products come with a syringe while the Children's Products come with a plastic cup).

27.     Both of the Products contain the same 160 milligram concentration of acetaminophen, are interchangeable, and are therefore suitable for infants and children, adjusting the dosage based only on the weight and age of the child.

28.     Defendant has been engaging in the unfair, unlawful, deceptive, and fraudulent practice of manufacturing, marketing and selling the same product as if it were two unique medicines, such that parents and caregivers mistakenly believe that they cannot purchase the significantly cheaper Children's Products for an infant.

29.     Defendant misleads consumers by using deceptive marketing techniques which obscure critical facts from consumers nationwide, namely that infants can safely take Children's Products and that the Products are exactly the same—from  consumers nationwide.

30.     Defendant deceives consumers so that they will buy the deceptively-labeled Infants' Products for infants, which cost significantly more than the Children's Products, even though the Products actually contain the same amount of acetaminophen in the same dosage amounts.

31.     In the pharmaceutical industry, there are various conventions applied in sub-dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: infant (1 month to 2 years) and children (2 to 12 years).[2] Similarly, Centers for Disease Control and Prevention ("CDC") define "infants" as being "0-1 year of age,"[3] while the American

---

[1] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.

[2] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited August 20, 2020).

[3] Child Development – Positive Parenting Tips – Infants (0-1 year) (available at

Academy of Pediatrics has a guide titled "Infant Food and Feeding"[4] which identifies infants as being between ages 0 and 12 months.[5]  Consumers may reasonably believe that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months to two years old.

32.     Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

33.     Specifically, Dollar General distinguishes the two products by calling one "infants'" and one "children's" in distinctive and yellow lettering.

---

https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html) (last visited August 20, 2020)

[4] AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Food-and-Feeding.aspx) (last visited August 21, 2020)

[5] *Id.* at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Timeline.aspx)

 

34.    Additionally, at the top right corner of the Infants' Products, Dollar General states "Compare to active ingredient of Infants' Tylenol® Oral Suspension," while the top right corner of the Children's Products states, "Compare to active ingredient of Infants' Tylenol® Oral Suspension." Through this wording, Dollar General attempts to deceive reasonable consumers into believing that the active ingredient, acetaminophen, in Infant Tylenol® is *different* than the active ingredient in Children's Tylenol®, when it knows that the active ingredient is the same.

 

35.     Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Dollar General markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher cost than the Children's Products. In stores, Infants' Products costs approximately three times as much per ounce over Children's Products for the same amount of medicine.

36.     Defendant further misleads consumers by placing "Ages 2-3" on the Infants' Products. Despite the inclusion of an age range, reasonable consumers believe that a product specifically labeled "infants" is just that, for infants. And no reasonable consumer (as confirmed by most generous FDA age classification, which confirms an infant is ages 1 month to 2 years) would believe that an "infant" is a 2 or 3 year old.

37.     Dollar General knows that consumers, such as Plaintiff, are particularly more cautious about what medicine they give to infants. Indeed, parenting resources express the conventional understanding that infants *cannot* tolerate medicines meant for older children.  For example, the popular parenting website "What to Expect" warns "Always use the infant formulations; never give your baby a medication intended for older kids or adults."[6]  This

---

[6] Colleen de Bellefonds, "Children's Medication Safety Tips and Guidelines." What to Expect (Jan. 22, 2019) (available at https://www.whattoexpect.com/family/childrens-health-and-safety/medication-safety-guidelines-

conventional understanding holds particularly true for parents and caregivers when they are giving their infant a medicine that has caused accidental deaths in the past.

38.     No reasonable consumer would be willing to pay more money – and certainly not three times as much per ounce – for Infants' Products unless he or she had good reason to believe that Infants' Products were different than Children's Products.

39.     Indeed, Dollar General's misrepresentations and omissions, as described above, would be important to a reasonable consumer in deciding whether to purchase Infants' Products.

## RULE 9(b) ALLEGATIONS

40.     Dollar General made material misrepresentations and failed to adequately disclose that the Products are the same. Except as identified herein, Plaintiff and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals at Dollar General who are responsible for such material misrepresentations and omissions.

41.     Dollar General made material misrepresentations regarding Infants' Products. Specifically, Dollar General marketed, labeled and sold Infants' Products in a manner to indicate to reasonable consumers that they are superior or somehow more appropriate for infants than Children's Products to justify charging the inflated price of Infants' Products. These representations were false and misleading because Infants' Products are the same as Children's Products.

42.     Dollar General's advertising, in-store labeling, marketing, and placement of the Products contained the material misrepresentations, omissions, and non-disclosures continuously

---

tips#:~:text=Always%20use%20the%20infant%20formulations,baby%20in%20a%20sitting%20position.) (emphasis added)

at every point of purchase and consumption throughout the Class Period.

43.     Dollar General made numerous misrepresentations on the advertising, in-store labeling, and marketing of Infants' Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing Infants' Products.

44.     Dollar General made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiff and other reasonable consumers to purchase or otherwise pay a price premium for Infants' Products based on the belief that Infants' Products were specifically designed for infants and different from the identical Children's Products. Dollar General profited by selling Infants' Products to thousands of unsuspecting consumers.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff seeks to bring this action as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated. Plaintiff seeks to represent the following classes:

> a.     The "Nationwide Class," which consists of: All individuals and entities in the United States who purchased Infants' Products in Dollar General's brick-and-mortar stores during the class period.
>
> b.     The "Florida Class," which consists of: All individuals and entities in Florida who purchased Infants' Products in Dollar General's brick-and-mortar stores during the class period.

46.     The following persons are excluded from the Nationwide Class, and Florida Class (collectively, the "Classes"): Dollar General, any entity in which Dollar General has a controlling interest or which has a controlling interest in Dollar General, and Dollar General's legal representatives, assigns and successors. Also excluded are the judges to whom this case is assigned and any member of the judge's immediate family.

47.     Plaintiff reserves the right to re-define the Classes prior to class certification.

48.     The Classes satisfy the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirement of Federal Rule of Civil Procedure 23(a) and (b)(3).

49.     **Numerosity:** The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Although the precise number of members of the Classes is unknown to Plaintiff at this time, on information and belief, the proposed Classes contain thousands of purchasers of Infants' Products who have been damaged by Dollar General's conduct as alleged herein.

50.     **Existence and Predominance of Common Questions of Law and Fact:** There are questions of law and fact common to the Classes. These questions predominate over individual questions because the actions of Dollar General complained of herein were generally applicable to the Classes. These legal and factual questions include, but are not limited to:

a.     Whether Infants' Products and Children's Products are the same;

b.     Whether Dollar General knew or should have known that Infants' Products and Children's Products are the same;

c.     Whether Dollar General's conduct and/or omissions in its marketing, labeling and selling the Infants' product in the manner discussed herein indicated to the members of the Classes that Infants' Products were superior or somehow more appropriate for infants than Children's Products;

d.     Whether Dollar General's misrepresentations and omissions were material to reasonable consumers;

e.     Whether Dollar General's labeling, marketing, and the sale of Infants' Products constitute false advertising;

f.     Whether Dollar General's conduct injured Plaintiff and the Classes and, if so, the extent of the damages; and

g.     The appropriate remedies for Dollar General's conduct.

51.     All questions as to the representations and publicly disseminated advertisements and statements attributable to Dollar General at issue herein are similarly common. A determination of Dollar General's knowledge regarding the misleading and deceptive nature of the

statements made in its website, advertisements, and labels will be applicable to all members of the Classes. Furthermore, whether Dollar General violated any applicable state laws and pursued the course of conduct complained of herein, whether Dollar General acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to the Classes.

52.     **Typicality:** Plaintiff's claims are typical of the Classes because Dollar General injured all members of the Classes through the uniform misconduct described herein; all members of the Classes were subject to Dollar General's false, misleading, and unfair marketing practices and representations, including the false and misleading claim that Infants' Products were different from Children's Products warranting a premium price; and Plaintiff seeks the same relief as the members of the Classes.

53.     Further, there are no defenses available to Dollar General that are unique to Plaintiff.

54.     **Adequacy of Representation:** The representative Plaintiff is a fair and adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes. The representative Plaintiff will prosecute this action vigorously, is highly motivated to seek redress against Dollar General, and has selected competent counsel that is experienced in class action and other complex litigation. The representative Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

55.     **Superiority:** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

   a.     The damages individual members of the Classes suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Dollar General's conduct.

   b.     It would be virtually impossible for the members of the Classes individually to

redress effectively the wrongs done to them. Even if they could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudications, economies of scale, and comprehensive supervision by a single court.

    c.    The prosecution of separate actions by the individual members of the Classes would create a risk inconsistent or varying adjudications with respect to individual members of the Classes members, which would establish incompatible standards of conduct for Dollar General.

    d.    The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to adjudications or that would substantively impair or impede their ability to protect their interests.

56.    The claims of the Classes may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3). The members of the Class also seek declaratory and injunctive relief but also seek sizeable monetary relief.

**FIRST CAUSE OF ACTION**
**Violation of FDUTPA, Florida Statute §§ 501.201, et seq.**
**(On Behalf of Plaintiff and the Florida Subclass)**

57.    Plaintiff hereby incorporates by reference paragraphs 1 through 56, above, as if fully set forth herein.

58.     Plaintiff and members of the Florida Subclass bring this Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, pursuant to Florida Statute § 501.211, which creates a private right of action for consumers, including Plaintiff and members of the Florida Subclass, to seek declaratory relief, injunctive relief, actual damages, and attorneys' fees and costs as provided in Florida Statute § 501.2105. All such relief is sought in this Count, and Plaintiff and all members of the Florida Subclass are entitled to such relief.

59.     Florida Statute § 501.204(1), prohibits "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

60.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

61.     Dollar General, at all relevant times, solicited, advertised, offered, provided and distributed goods in the State of Florida, and thereby was engaged in trade or commerce as defined by Fla. Stat. § 501.203(8).

62.     Plaintiff and all members of the Florida Subclass were, at all relevant times, consumers, as defined by Fla. Stat. § 501.203(7), and are thus entitled to seek the relief alleged in this Count.

63.     Dollar General engaged in unfair and deceptive acts, in violation of Fla. Stat. § 501.204, when making representations, including in the Products' labels and packaging, that its Products contained specific amounts of acetaminophen, when in fact, the Products did not contain those amounts.

64.     It was reasonable for consumers, including Plaintiff and members of the Florida Subclass, to rely on Dollar General's representations about the amount of acetaminophen in the Products. Had consumers like Plaintiff and members of the Florida Subclass known that those

representations were false and misleading, they would not have purchased the Products or would have paid less for them.

65.     Dollar General 's unfair and/or deceptive acts were likely to deceive reasonable consumers, such as Plaintiff and members of the Florida Subclass, about the true nature of the Products that Dollar General manufactures, distributes, and sells.

66.     As a direct and proximate result of Dollar General's violations of the above-referenced statutes concerning FDUTPA, Plaintiff and members of the Florida Subclass suffered legally cognizable injuries and are therefore entitled to actual damages, declaratory and injunctive relief, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*
### (On behalf of Plaintiff and Nationwide Class)

67.     Plaintiff hereby incorporates by reference paragraphs 1 through 56, above, as if fully set forth herein.

68.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Nationwide Class. Upon certification, the Class will consist of more than 100 named plaintiffs.

69.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

70.     The Infants' Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

71.     Plaintiff and the Nationwide Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

72.     Dollar General is the "supplier" and "warrantor" of the Infants' Products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

73.     Dollar General represented in writing that the Infants' Products were manufactured or designed for infants by prominently displaying the word "infants'" on the front-label packaging and the product information and price tags displayed next to Infants' Products on the store shelves.

74.     These statements were made in connection with the sale of the Infants' Products, relate to the nature of the Infants' Products, and affirm and promise that the Infants' Products are as represented, and as a result, the statements constitute "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

75.     As alleged herein, Dollar General breached the written warranty by selling Infants' Products that were nothing more than Children's Products with the word "infants" prominently displayed.

76.     The Infants' Products do not conform to Dollar General's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On behalf of Plaintiff and Nationwide Class)

77.     Plaintiff hereby incorporates by reference paragraphs 1 through 56, above, as if fully set forth herein.

78.     Plaintiff, on behalf of himself and the Nationwide Class members, brings a common law cause of action for unjust enrichment.

79.     Dollar General's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling Infants' Products while misrepresenting and omitting material facts.

80.     Dollar General's unlawful conduct, as described in this Complaint, allowed it to knowingly generate substantial revenues from the sale of Infants' Products at the expense of, and

to the detriment of, Plaintiff and the Nationwide Class members. Dollar General's enrichment was unjust and thereby violated fundamental principles of justice, equity, and good conscience.

81.     Plaintiff and the Nationwide Class members conferred significant financial benefits and paid substantial compensation to Dollar General for Infants' Products, which were not as Dollar General  represented them to be.

82.     Under Florida's common law principles of unjust enrichment, it is inequitable for Dollar General  to retain the benefits or enrichment conferred on it by Plaintiff and the Nationwide Class members' overpayments.

83.     Plaintiff and the Nationwide Class members seek disgorgement of all profits resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and the Nationwide Class members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Classes, pray for judgment as follows:

(a)     Certifying that the action may be maintained as a Class Action and that Plaintiff be appointed as Class Representatives and its counsel as Class Counsel;

(b)     Declaring that Dollar General  is financially responsible for notifying the members of the Class of the pendency of this suit;

(c)     Declaring that Dollar General  has committed the violations of law alleged herein;

(d)     Providing for any and all injunctive relief the Court deems appropriate;

(e)     Awarding statutory damages in the maximum amount permitted by law;

(f)     Awarding monetary damages, including but not limited to, compensatory, incidental, and/or consequential damages in an amount to be determined by the Court or jury, in accordance with applicable law;

(g)     Providing for any and all equitable or monetary relief the Court deems appropriate;

(h)     Awarding Plaintiff his reasonable fees and expenses of suit, including attorneys' fees;

(i)      Awarding Plaintiff pre-judgment interest and post-judgment interest, to the extent

         permitted by law; and

(j)      Providing such other relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 15, 2020


By: */s/ Rachel Dapeer*
**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone:  (305) 975-3320

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (*Pro Hac Vice forthcoming*)
mweiner@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610