## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DAVID LEVY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:20-cv-01037-TJC-MCR |
| v. | ) ) | |
| DOLGENCORP, LLC, DOLLAR GENERAL CORP., and DG RETAIL, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR CLASS REPRESENTATIVE SERVICE AWARD, ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

This Action[1] is one of many novel class actions that arose after the U.S. Food and Drug Administration ("FDA") directed that infants' liquid acetaminophen must be sold in the exact same formulation as children's liquid acetaminophen in response to consumer confusion about the previous differences in concentrations which led to accidental overdoses. Plaintiff's lawsuit alleges that even though the formulations are now identical, Defendants Dolgencorp, LLC, Dollar General Corporation, and DG Retail, LLC (collectively, "Defendants" or "Dollar General") label their Infants' Pain & Fever Acetaminophen—DG™ ("DG Health Infants' Acetaminophen" or "Infants' Products") to imply to reasonable

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Settlement Agreement.

consumers that it is specially formulated or otherwise uniquely suitable for infants.

Taking into account the inherent risk in litigation for both sides, the Parties negotiated the Settlement Agreement attached as *Exhibit A*. The settlement is an outstanding result and consists of meaningful injunctive relief and Dollar General's agreement to a common fund of $1,800,000.00, which will cover payment to Class Members for Approved Claims, the Fee Award, Settlement Administration Expenses and the Class Representative Service Award.

The Parties now seek Final Approval of the Settlement Agreement.  In further support of this Motion, the Parties submit a Joint Declaration of Class Counsel Melissa Weiner, Rachel Dapeer, Scott Edelsberg, and Andrew Shamis, attached as *Exhibit B* ("Joint Decl."), and a Declaration of Gina M. Intrepido-Bowden, the Settlement Administrator, attached as *Exhibit C* ("Intrepido-Bowden Decl.").

The Parties respectfully request that the Court: (1) grant final approval of the Settlement and certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (2) appoint the Plaintiff as Named Class Representative; (3) appoint as Class Counsel the undersigned attorneys; (4) approve Plaintiff's requested Class Representative Service Award; (5) award Class Counsel the Fee Award; and (6) enter final judgment dismissing the Action with prejudice.

Based on the controlling Eleventh Circuit standards, and supporting facts, the Settlement is fair, adequate, and reasonable and should therefore be finally approved.

962131.2                                    1

## I.  <u>INTRODUCTION</u>

Dollar General sold its Infants' Pain & Fever Acetaminophen ("Infants' or Infants' Products), a private label product, alongside brand-name acetaminophen products such as Infants' Tylenol and Children's Tylenol. Ten years ago, the Infants' Products was only available with a concentration of 80 mg/mL of acetaminophen, and the Children's Pain & Fever Acetaminophen ("Children's" and together with Infants', the "Products") was only available with a concentration of 160 mg/5 mL of acetaminophen.    In May 2011, after several well-publicized child deaths, manufacturers (including Dollar General) changed Infants' to 160 mg/5 mL, the same concentration as Children's, to avoid confusion and possible overdose. Since then, Plaintiff alleges that the only differences in liquid acetaminophen marketed for infants versus children have been the price and dosing instrument included with the products (i.e. Defendants' Infants' Products come with a syringe while the Children's Products come with a plastic cup).  Both of the Products contain the same concentration of acetaminophen and are interchangeable according to Plaintiff. As such, Plaintiff alleges that both Products are suitable for infants and children. Plaintiff sued Dollar General for allegedly marketing the Infants' Product as indicating to reasonable consumers that it is specially formulated for infants and charging a price premium— up to *three* times as much per ounce—despite the fact that the Infants' Product contains the same active ingredient and formulation (i.e. 160 mg per 5 mL of acetaminophen) that is contained in a bottle of Defendants' Children's Products. Plaintiff sued Dollar General for such premiums, asserting claims for Florida's consumer protection

statutes, as well as claims for breach of the Magnuson-Moss Warranty Act and unjust enrichment.

The Settlement Agreement is the result of a multi-month mediation process with the assistance of the well-respected mediator, the Honorable Morton Denlow (ret.). The parties participated in a lengthy formal mediation and several months of follow-up efforts, which resulted in the executed Settlement Agreement. The Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation.

On May 19, 2021, the Court entered its Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class, DE # 29 (the "Preliminary Approval Order"), which further directed that notice be provided to the Settlement Class and established a deadline for filing this Motion, and for requests for exclusions and Objections to be filed with the Court.

## II.    MOTION FOR FINAL APPROVAL

### A.    Procedural History

On September 15, 2020, Plaintiff filed a class action complaint on behalf of himself and all others similarly situated based on Defendants' alleged false and deceptive labeling of the Infants' Products and seeking restitution and damages for the difference in price between Dollar General's Infants' Products and Children's Products. [DE #1] Before filing his Complaint, Plaintiff provided pre-suit notice to Defendants. Joint Decl. ¶ 3. During this pre-suit time period, the Parties and their respective counsel first engaged in extensive direct negotiations over multiple months in the spring and

summer of 2020. *Id*. Then, after filing, the Parties engaged in extensive arm's-length negotiations under the supervision of Judge Denlow, who is a retired Article III judge from the Northern District of Illinois and now an experienced mediator with JAMS. *Id*. ¶ 4. The Parties' mediation efforts included a formal mediation on October 12, 2020. *Id*. After the mediation, the Parties spoke every few days with Judge Denlow until the final material terms were agreed to. *Id*. In working with the mediator, the Parties exchanged multiple rounds of settlement proposals related to all aspects of settlement, eventually reaching an agreement in principle in early November 2020. *Id* ¶ 6. The result was the Parties' Settlement Agreement, which will resolve this Action in a manner that is fair, reasonable, and reflects the best interests of the Settlement Class as a whole and avoids the expense, burden, and risks associated with further protracted, complex, class action litigation. *Id*. ¶¶ 14,16-21, 33.

On February 2, 2021, Plaintiff and Class Counsel filed their Unopposed Motion for Preliminary Approval. [DE #22]. On May 19, 2021, the Court entered the Preliminary Approval Order that, *inter alia*, directed that Notice be disseminated and established deadlines for the filing of this Motion, the timely submission of Objections or opt-outs, and set a date for the Final Approval Hearing. [DE #29].

**B.    Summary of the Settlement Terms**

The Settlement terms are detailed in the Settlement Agreement. *See* Ex. A. The following is a summary of its material terms.

### 1.    The Settlement Class

The Settlement Class is defined as:

[A]ll individuals in the United States who purchased DG Health Infants'
Acetaminophen within the Class Period for personal or household use.

Agreement § 2(*l*). Excluded from the Class are: (a) Defendants; (b) the officers,
directors, or employees of Defendants and their immediate family members; (c) any
entity in which Defendants have a controlling interest; (d) any affiliate, legal
representative, heir, or assign of Defendants; (e) all federal court judges who have
presided over this Action and their immediate family members; (f) all persons who
submit a valid request for exclusion from the Class; and (g) those who purchased the
DG Health Infants' Acetaminophen for the purpose of resale or for use in a business
setting. *Id.* § 2(*l*).

### 2.    Monetary Relief

The Settlement Agreement obligates Defendants to establish a Claim Fund in
the amount of $1.8 million which shall be used to: (i) pay all payments to Settlement
Class Members who submit Approved Claims; (ii) pay the Fee Award; (iii) pay any
awarded Class Representative Service Award; (iv) pay Claim Fund Expenses; and (v)
pay any Settlement Administration Expenses.  Agreement § 2(g). In order to receive a
payment from the Claim Fund, Settlement Class Members must complete an online
or paper Claim Form. Each Settlement Class member who timely filed a valid Claim
Form shall become entitled to a distribution payment payable by check.

Each Settlement Class member who timely files a valid Claim Form shall receive a cash distribution payable by check for $1.70 per Infants' Product for all claims submitted with proof of purchase, and $1.70 per Infants' Product up to a maximum $5.10 without proof of purchase. Agreement §§ 2(g), 5(b). The Claim Fund is a common fund that will also cover the Fee Award, the Class Representative Service Award, if any, certain notice and administration costs, and Claim Fund Expenses. *Id.* Defendants previously funded an escrow account with the estimated Settlement Administration Expenses pursuant to the Settlement Agreement. *Id.* § 5(b)(1). Within three days of the Court entering the Final Settlement Order and Judgment, Defendants will deposit the remainder of the $1.8 million. *Id.*

## 3.  <u>Injunctive Relief</u>

In addition to the monetary relief described above, Dollar General agreed to meaningful injunctive relief that directly addresses Plaintiff's concerns and allegations. Specifically, Dollar General will not sell DG Health Infants' Acetaminophen unless it states that the liquid medicine in the Infants' Product contains the same concentration of liquid acetaminophen that is in DG Health Children's Acetaminophen or language on the labeling/packaging that is substantially similar.[2] Agreement § 5(a)(i)(1).

---

[2] Dollar General agrees to adhere to this restriction by 360 days following the Effective Date (i.e., the Injunctive Relief Effective Date). Agreement § 5(a)(i)(1). Sales of DG Health Infants' Acetaminophen manufactured prior to the Injunctive Relief Effective Date, or during the time Dollar General is using reasonably diligent efforts under the circumstances to modify its current packaging as required by the Settlement Agreement, shall not constitute a violation of the Settlement Agreement or be subject to any claims. *Id.* § 5(a)(ii). Dollar General is permitted to sell its existing inventory (including existing packaging and/or labeling) at the time of the Injunctive Relief Effective Date for a period of 360 days after the Injunctive Relief Effective Date. *Id.*

4.    **Class Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Dollar General from claims related to the subject matter of the Action.  The detailed release language is found in Section 9 of the Agreement.

5.    **Settlement Notice**

The Parties have successfully completed the Notice Program. Joint Decl. ¶ 8. The Notice Program was designed to and did provide the best notice practicable and consisted of notice by publication, mail and email.  *See* Agreement §§ 7(b); Joint Decl. ¶ 9. All costs of the Settlement Administrator shall be paid out of the Settlement Fund. Agreement § 7(b). The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's attorneys' fee application and request for Class Representative Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. Intrepido-Bowden Decl. ¶¶ 10-27; Joint Decl. ¶10.  The Notices and Notice Program constituted sufficient notice to all persons entitled to notice and satisfied all applicable requirements of law including, but not limited to, Rule 23 and the constitutional requirement of due process. Preliminary Approval Order ¶ 8; Intrepido -Bowden Decl. ¶34; Joint Decl. ¶11.

6.    **Settlement Termination**

Either Party has the right to terminate the Settlement Agreement if it is

rejected or materially modified by the Court or an appellate court. Agreement §

11. Dollar General also has the right to terminate the Settlement Agreement if

more than 100 Settlement Class Members from among the total Settlement Class

exercise their right to opt-out of the Settlement. Agreement § 11(a)(vi). The Opt-

Out Period ends 17 days before the Final Approval Hearing. To date, there is only

one opt-out, making it unlikely the 100 required to terminate the Settlement will

be reached. Joint Decl. ¶ 12.

### 7. **Service Award**

Pursuant to the Settlement Agreement, Class Counsel are entitled to request a

Class Representative Service Award of $5,000 for the Named Class Representative.

Agreement § 6(b). If the Court approves it, the Service Award will be paid from the

Claim Fund and will be in addition to any other relief to which the Class

Representative is entitled as a Settlement Class Member.  *See id.*   The Class

Representative Service Award will compensate Class Representative for his time and

effort in the Action, and for the risks he undertook in prosecuting the Action against

Defendants.

### 8. **Attorneys' Fees and Costs**

Class Counsel are entitled to request attorneys' fees of up to 33.33% of the

Claim Fund, plus reimbursement of litigation costs. Agreement § 6(a). The Parties

negotiated and reached an agreement regarding attorneys' fees and costs only after

reaching agreement on all other material terms of the Settlement Agreement.  Joint

Decl. ¶¶13, 27.

**C.**    **Argument**

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'" *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *21 (M.D. Fla. Aug. 25, 2021) (citing *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)). In evaluating a proposed class settlement, the court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *12 (S.D. Fla. Nov. 5, 2015) (quoting *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, federal courts recognize "in class action suits, there is an overriding public interest in favor of settlement." *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *14 (M.D. Fla. Nov. 23, 2009). The Settlement Agreement here is more than sufficient under Rule 23(e), and Final Approval is clearly warranted.

1. **The Court Has Personal Jurisdiction Over the Settlement Class Because Settlement Class Members Received Adequate Notice and an Opportunity to Be Heard.**

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the Notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

(a)    **The Best Notice Practicable Was Furnished.**

The Notice Program was comprised of three parts: (1) publication notice through a digital campaign; (2) establishment of a settlement website; and (3) direct notice (along with a Claim Form) by email or mail to available addresses. Agreement § 7(b); Intrepido-Bowden Decl. ¶¶ 4-5, 33.

Each facet of the Notice Program was timely and properly accomplished. Intrepido-Bowden Decl.¶¶ 10-27. The Settlement Administrator received data from Dollar General that identified the names and contained a phone number and/or email address which identified 76,598 unique records, 68,295 contained at least one email address. Intrepido-Bowden Decl. ¶¶ 6-7. JND performed a reverse phone number search on the records to identify 39,728 additional emails and 12,098 additional addresses. *Id.* ¶ 7 On June 8, 2021, the Settlement Administrator sent Email Notice to 103,698 Settlement Class Members. *Id.* ¶¶ 7-9. As of June 16, 2021, Email Notice to 15,553 Settlement Class Members "bounced back" as undeliverable, prompting

5,473 additional postcard notices to be mailed. *Id.* ¶12. Pursuant to the Preliminary Approval Order, JND mailed the Court-approved Mailed Notice by USPS mail, postage prepaid, to 6,980 potential Settlement Class Members. *Id.* ¶13. As of September 15, 2021, 94,381 Settlement Class Members received Email or Mail Notice. *Id.* at ¶14. While the Claim Administrator has not yet completed the review of submitted claims, based on a generous assumption regarding claim validity, no Settlement Class Member will receive a *pro rata* reduction. *Id.* at ¶32

On July 19, 2021, JND launched a digital effort which delivered a total of 294,047,825 impressions. *Id.* at ¶15. The ads targeted Settlement Class Members and provided a direct link to the Settlement Website. *Id.* On June 8, 2021, JND distributed a national press release to over 15,000 outlets which was picked up 215 times with a potential audience of 133 million people. *Id.* at ¶21.The Settlement Website, www.DGInfantAcetaminophenSettlement.com, went active on June 6, 2021, hosting copies of important case documents, answers to frequently asked questions, contact information for Class Counsel and the Settlement Administrator, the link to electronically file the Claim Form, and all information required by the Preliminary Approval Order. *Id.* ¶ 22. As of September 15, 2021, the Settlement Website has tracked 144,764 unique users who registered 328,780 page views. *Id.* ¶ 23. In addition, a toll-free number, 1-833-722-0894, was established and has been operational since June 4, 2021. *Id.* ¶ 24. JND also established a Settlement email address,

info@DGInfantAcetaminophenSettlement.com, and a Post Office address. *Id.* ¶ 25. By calling or emailing, Settlement Class Members are able to obtain Settlement information, 24 hours a day, 7 days a week. *Id.* As of September 15, 2021, the toll-free number has received 36 calls and 125 emails. *Id.* ¶¶ 24-25.

**(b)    The Notice Program Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.**

The Court-approved Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 U.S. Dist. LEXIS 56655, at *11 (M.D. Fla. Apr. 2, 2019) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05). The Notices, among other things, defined the Settlement Class, described the release to Dollar General under the Settlement, as well as the amount and proposed distribution of the Claim Fund, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Settlement Agreement and Notice, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to 33.33% of the Claim Fund, plus expenses, and a Class Representative Service

Award.  Hence, Settlement Class Members were provided with the best practicable notice   that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Intrepido-Bowden Decl., Exhibits B and E.

As of September 17, 2021, the Settlement Administrator has received one opt-out request, and no objections to the Settlement had been filed. Joint Decl. ¶12; Intrepido-Bowden Decl. at ¶¶ 27, 29. Updated information will be supplied after the deadline to opt-out or object and prior to the Final Approval Hearing, if needed.

### 2.    The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527,1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Rigney v. Livingston Fin., LLC*, No. 6:12-cv-617-Orl-37TBS, 2014 U.S. Dist. LEXIS 196426, at *19 (M.D. Fla. Mar. 6, 2014) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement

as they might have recovered from victory at trial." *Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 U.S. Dist. LEXIS 181656, at *12 (S.D. Fla. Oct. 1, 2020) (quotation omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1)    the existence of fraud or collusion behind the settlement;

(2)    the complexity, expense, and likely duration of the litigation;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the probability of the plaintiffs' success on the merits;

(5)    the range of possible recovery; and

(6)    the opinions of the class counsel, class representatives, and

       the substanceand amount of opposition to the settlement.

*Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Additionally, effective December 1, 2018, Rule 23(e) was amended to add a mandatory, but not exhaustive, list of similar final approval factors:

(A) the class representatives and class counsel have adequately

    represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief

to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The analysis set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### (a)  There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length.

Prior to filing the complaint, the parties engaged in meaningful dialogue, and Dollar General sharply contested this Action, which demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (no evidence of collusion, but to the contrary record showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989); *see also Diaz v. Hillsborough Cty. Hosp. Auth.*, CASE NO. 8:90-CV-120-T-25B, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000).

Class Counsel negotiated the Settlement with similar force. Plaintiff and the

Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Dollar General engaged in formal mediation with Mr. Denlow. All negotiations were arm's-length and extensive. Joint Decl. ¶¶4-5; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla.2007) (class settlement was not collusive because it was overseen by "an experienced and well-respected mediator"); *see also Diaz*, 2000 U.S. Dist. LEXIS 14061, at *15-16.

**(b)    The Settlement Will Avert Years of Complex and Expensive Litigation.**

The claims and defenses are complex; litigating them is both difficult and time-consuming,and recovery by any means other than settlement would require years of litigation.  Joint Decl. ¶14.  *See also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complexlitigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"); *United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty,expense and delay inherent in a trial").  The Settlement provides immediate and substantial benefits  to a Settlement Class of over 28,000 members.  Joint Decl. ¶14.

As stated in *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the

> mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

(quoting *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993)) (alterations in original and internal citation omitted). Because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), the Settlement's adequacy under Rule 23(e)(2)(C), providing reasonable settlement benefits, should not be doubted.

### (c)    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Gevaerts*, 2015 U.S. Dist. LEXIS 150354, at *19 (quoting *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted discovery. Joint Decl. ¶ 15. Specifically, Class Counsel reviewed critical documents and data regarding the labeling of the Products and the class membership. *Id.* Plaintiff also spent considerable time researching and navigating Defendants' numerous defenses. *Id.* As

such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. *Id.*

**(d)    Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.**

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Wave Lengths Hair Salons of Fla. v. Cbl & Assocs. Props.*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239523, at *21 (M.D. Fla. Aug. 22, 2019) (internal citation omitted); *see also Ressler*, 822 F. Supp. At 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.")

Class Counsel believes that Plaintiff had a strong case against Defendants. Joint Decl. ¶ 17. Even so, Class Counsel are mindful that Defendants advanced significant defenses. *Id.* This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id.*

To prevail at trial, Plaintiff would need to prove not only that the challenged representations mislead consumers into believing Infants' was specially formulated for infants, but also the following: Dollar General's omission of an express statement

962131.2                                   18

telling consumers that the Infants' Products contain the same medicine as Children's is material; the representations and/or omissions caused Plaintiff and the Settlement Class' injuries; and, restitution and/or recoverable damages. Joint Decl. ¶ 18. Throughout the litigation, Dollar General has taken the position that the challenged representations are not deceptive, and that the phrase "specially formulated" does not appear in any Infants' marketing and is undefined and immaterial. *Id.* Dollar General also defended their conduct on a robust safety argument. Namely, that Infants' and Children's are not the same products because—for safety reasons—they (i) contain different dosing devices and (ii) utilize different bottle flow restrictors to prevent accidental overdose. *Id.*

Several Courts have since found that the same type of labeling and omissions challenged here were sufficient to survive a motion to dismiss, including the *Elkies* case in which the Court subsequently awarded class certification. *See Elkies v. Johnson & Johnson Servs., Inc.*, No. 2:12-cv-07320, 2018 U.S. Dist. LEXIS 24505, at *7-8 (C.D. Cal. Feb. 22, 2018) (a label with the word "Infants" and the lack of "any express disclosure that the medicine in the bottle is exactly the same, and provided at the exact same concentration," could mislead consumers to believe "that Infants' is unique or specially formulated for children under two."); *McFall v. Perrigo Co.* (C.D. Cal. Apr. 15, 2021, No. 2:20-cv-07752-FLA (MRWx)) 2021 U.S.Dist. LEXIS 109451, at *36 ("Viewing the 'infant's' modifier, image of a stroller, and the instruction to compare to another infant's product, a reasonable consumer could believe Infants' Equate is specially formulated for infants or otherwise different from the Children's Equate.");

*Burchfield v. Prestige Consumer Healthcare, Inc.*, No. 2:20-cv-10717-DSF-RAO, at 7 (C.D. Cal. April 16, 2021), Exhibit 1, at 7 ("Plaintiffs have at least plausibly alleged that a reasonable consumer would believe the product was specifically formulated for infants.")

The landscape remains uncertain, however, as several courts have dismissed similar labeling cases. *See Lokey v. CVS*, No. 20-cv-04782-LB, 2020 U.S. Dist. LEXIS 218087, (N.D. Cal. Nov. 20, 2020); *Eidmann v. Walgreen Co.*, No. 20-cv-04805-ELD, 2021 U.S. Dist. LEXIS 36800 (N.D. Cal. Feb. 26, 2021); and *Harris v. Topco Assocs., LLC*, No. 20 C 4355, 2021 U.S. Dist. LEXIS 89716 (N.D. Ill. May 11, 2021).

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Joint Decl. ¶ 19. The uncertainties and delays from this process would have been significant. *Id.*

Given the myriad risks attending these claims, as well as the certainty of substantial delay  and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 WL 19915, at *6 (N.D. Fla.Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. It is possible that trial on the merits would result in … no relief for the class members. . . . Based on . . . the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement is a fair and reasonable compromise."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great

uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers to the vagaries of a trial").

**(e)**    **<u>The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.</u>**

In determining whether a settlement is fair given the potential range of recovery, the court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Joint Decl. ¶ 20. Each Settlement Class Member who opted to participate in the settlement will receive a partial refund of $1.70 for every 1 fl. oz. bottle of Infants' Acetaminophen and 2 fl. oz. bottle of Infants' Acetaminophen for which they have a valid proof of purchase, without limitation, or in the alternative, up to a maximum of 3 units, i.e., a total of up to $5.10 per household without proof of purchase. *Id*.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class Members when considering Defendants' defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have

continued to face in the trial and appellate courts.  Joint Decl. ¶ 21. *See Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 U.S. Dist. LEXIS 56655, at *4 n.2 (M.D. Fla. Apr. 2, 2019) (approving settlement of approximately $7.00 per class member.); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 U.S. Dist. LEXIS 167022, at *4-5 (M.D. Fla. Nov. 22, 2016) (approving settlement of $3.00-$5.00 per class member).

### (f)    The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the settlement. Joint Decl. ¶ 20.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted); *see also Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, No. 8:02-CV-609-T-30EAJ, 2006 U.S. Dist. LEXIS 60938, at *1 (M.D. Fla. Aug. 28, 2006) ("In the context of approval of a class action settlement, in the absence of fraud, collusion or the like, a court is entitled to rely upon the judgment of experienced counsel for the parties and should be hesitant to substitute its own judgment for that of counsel.")

There has been no opposition to the Settlement, as not a single Objection was filed to date. Joint Decl. ¶ 12. This is another indication that the Settlement Class is

clearly satisfied with the Settlement. Even if there were some Objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.    The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Fed. R. Civ. P. 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the Settlement Class Members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

Rule 23(a)(1) numerosity is satisfied because the Settlement Class consists of over 6,000 individuals, and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, Rule 23(a)(2) commonality is readily satisfied as there are multiple questions of law and fact – *e.g.*, whether consumers were misled by Defendants' labeling– that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Settlement Class Members, satisfying Rule 23(a)(3) typicality. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class Members. He purchased the Infants' Products for his then infant children and grandchildren based on its misleading label, suffered the same damages, and they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). The determinative

factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and who devoted substantial time and resources to vigorous litigation of the Action. *Id;* Joint Decl. ¶22, Exhibits 1-4.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart HealthSys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Rule 23(b)(3)'s predominance requirement is readily satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P.

23(b)(3).

Based on the foregoing, the Settlement is fair, adequate and reasonable and shouldtherefore be finally approved.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendants do not oppose, a Service Award for the Named Class Representative in the amount of $5,000.00.  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  However, recently, in *Johnson v. NPAS Solutions, LLC*,975 F.3d 1244 (11th Cir. 2020), the Eleventh Circuit held that 19th century Supreme Court precedent prohibits an incentive award that "compensates a class representative for his time and rewards him for bringing a lawsuit."[3] *Id.* at 1260–61.  In the two cases from the 1800s relied on by the majority in *Johnson*, the named plaintiffs sought an actual salary for the time they expendedon the case and reimbursement for personal expenses like train fare they incurred while performingwork for the case. *Id.* at 1256–57.

This case is distinguishable from *Johnson*. First, unlike the service award in *Johnson*, the  Service Award here is not a "salary" or "bounty," but rather is an

---

[3] No mandate in *Johnson* has been issued and a motion for rehearing *en banc* is pending.

award for the risk that Plaintiff undertook in bringing the case on behalf of the class. *See Pledger v. Reliance Trust Co.*, No. 15- cv-4444, 2021 WL 2253497, at *8-9 (N.D. Ga. Mar. 8, 2021) (distinguishing *Johnson* and approving $25,000.00 payments from the settlement fund to each of five class representatives in the case where they "were not promised a 'bonus' or 'salary,' but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights."); *Henderson v. Emory University*, No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020) (distinguishing *Johnson* and approving incentive awards to class representatives where they faced considerable risk in pursuing the lawsuit, the settlement agreement was not contingent on the class representatives receiving an award, and the class representatives were integral to achieving the settlement which in turn benefited the entire class.). Here, there was no discussion of attorneys' fees or a Class Representative Service Award until all material terms of the Settlement were reached, Joint Decl. ¶¶ 25, 27, so this is not a pre-promised "salary" or "bounty" to pay for Plaintiff's time or reward him for bringing the suit that would have driven him to make decisions against the best interests of the class (a primary concern in *Johnson*'s reasoning). Plaintiff also provided substantial assistance that enabled Class Counsel to successfully prosecute the Action, including submitting to interviews with Class Counsel, reviewing all material filings, approving the Settlement, locating and forwarding responsive documents and information, and participating in mediation. Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary. In so doing, Plaintiff was

integral to forming the theory of the case and litigating it through settlement. Joint Decl. ¶23. Accordingly, *Johnson* does not prevent the requested Class Representative Service Award.[4]

The end-result of Plaintiff's efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class. Joint Decl. ¶24. The Service Award of $5,000.00 is in the range of what has been deemed to be reasonable. *Id.* at ¶26; *see, e.g., Papa v. Grieco Ford Fort Lauderdale, LLC*, No. 18-cv-21897, 2019 WL 11623986, at *3 (S.D. Fla. June 5, 2019) (approving service award of $10,000.00, or about .205% of a $4,871,160.00 settlement). Accordingly, the Class Representative Service Award requested here is reasonable and should be approved.

## IV. APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $600,000.00, which is equal to 33.33% of the $1,800,000.00 Settlement Fund. Joint Decl. ¶27. Class Counsel also request reimbursement of limited out-of-pocket costs and expenses totaling $10,910.49 incurred in connection with the prosecution of the Action and in connection with

---

[4] If this Court is not inclined to approve the requested Class Representative Service Award based on *Johnson*, Class Counsel respectfully request that this Court approve the remainder of the Settlement and reserve jurisdiction to allow Class Counsel to renew the request for a service award should *Johnson* be reversed. *See Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 WL 2012366(S.D. Fla. May 20, 2021) (reserving jurisdiction to award service awards if *Johnson* is reversed).

the Settlement. *Id*. Class Counsel and Dollar General negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id*. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (quoting *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989)). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (citing *Van Gemert*, 444 U.S. at 478). "As a result,

the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Gevaerts*, No. 11:14-cv- 20744, 2015 WL 6751061, at *10 (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F.Supp. 2d at 1333 (quoting *Camden I*,

946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Class Counsel's fee request falls within this accepted range.

### 1.    Application of the *Camden I* Factors Supports the Requested Fee.

The Eleventh Circuit has provided a set of factors the Court should use to determine areasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)    the time and labor required;
(2)    the novelty and difficulty of the relevant questions;
(3)    the skill required to properly carry out the legal services;
(4)    the preclusion of other employment by the attorney as a result of hisacceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the clients or the circumstances;
(8)    the results obtained, including the amount recovered for the clients;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the clients;and
(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.

These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. Here, these factors support the requested fee.

### 2.    The Claims Against Dollar General Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶28. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims against Dollar General. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and   resources were also dedicated to conducting discovery. *Id*. Class Counsel reviewed documents produced by Dollar General. *Id*.

Settlement negotiations consumed additional time and resources. *Id.* at ¶29. The mediation session and subsequent settlement discussions required substantial preparation and damage analysis. *Id.* Finally, significant time was devoted to the

negotiating and drafting of the Settlement Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. *Id.* All of this work consumed a substantial amount of time. *Id.* Class Counsel will also spend time with settlement administration after Final Approval. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* at ¶30. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id* at ¶31. The time and resources Class Counsel devoted to prosecuting and settling this Actionreadily justify the requested fee. *Id.*

### 3.    The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

Class Counsel's legal work conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. *Id.* at ¶ 38. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information. *Id.*

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. *Id.* at ¶ 39.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D.

at 654. Throughout the litigation, Defendants were represented by extremely capable counsel. *Id*. at ¶ 40. They were worthy, highly competent adversaries. *Id*.; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 4.    Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member will receive an immediate cash benefit. Joint Decl. ¶ 32. Additionally, Dollar General will refrain from the allegedly misleading labeling practice complained of in this lawsuit. *Id*.

### 5.    The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks. Joint Decl. ¶ 16. As discussed, Defendants raised substantial and meritorious defenses. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel

in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). "Undesirability" and relevant risks must be evaluated from the standpoint of class counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting the Action was risky from the outset. Joint Decl. ¶ 16. Defendants were confident in their opposition to Plaintiff's claims. Given these risks, the $1,800,000.00 cash recovery obtained through the Settlement is substantial in light of the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Dollar General's defenses, as well as given the challenging and unpredictable path of litigation Plaintiff and the certified class

would have faced absent the Settlement. Joint Decl. ¶33.

      **6.**    **Class Counsel Assumed Considerable Risk to**
              **Pursue This Action on a Pure Contingency Basis.**

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Joint Decl. ¶ 34. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Joint Decl. ¶33. In the Court's words:

> Attorney's risk is "perhaps the foremost factor" in determining an appropriate fee award. Indeed "[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees"… Without the "bonus" from a contingency arrangement, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing."

*Wave Lengths Hair Salons of Fla.*, 2019 U.S. Dist. LEXIS 239523, at *43-44.

The progress of the Action shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Class Counsel remains completely uncompensated for the time invested in the Action, in addition

to the substantial expenses they have advanced. Joint Decl. ¶36. There can be no

dispute that this case entailed substantial risk of nonpayment for Class Counsel.

7.      **The Requested Fee Comports with Fees Awarded
        in Similar Cases.**

The fee sought here is within the range of fees typically awarded in similar

cases in the Eleventh Circuit and in its district courts. *See, e.g.*, *Atkinson v. Wal-Mart

Stores, Inc.*, Case No. 08-cv-691, 2011 U.S. Dist. LEXIS 150274, 2011 WL

6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-

third of maximum common fund apportioned as attorneys fees); *In re Home

Shopping Network Sec. Litig.*, No. 87-428-Civ-T-13(A) (M.D. Fla. Oct. 15, 1991)

(awarding 33%); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK,

2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan

v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding

33.33%); *Legg v. Laboratory Corp. of Am.*, No. 14-cv 61543-RLR, 2016 WL 3944069,

at *3 (S.D. Fla. Feb. 18, 2016) (awarding one-third of gross recovery for attorneys'

fees, plus expenses); *Reyes v. ATT&T Mobility Servs., LLC*, No. 10-20837-Civ-

COOKE, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (awarding one-third

of the total maximum settlement fund); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV,

2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage

award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-

third.") (citing Circuit case law and listing Middle and Southern District of Florida

attorneys' fees awards); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-

1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082, at *20-21 (S.D. Fla. April 19, 2005) (awarding fees of 33.33 % of settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238, at *12-13 (S.D. Fla. May 30, 2003) (awarding fees of 33.33 % of settlement); *Tapken v. Brown*, No. 90-0691-CIV-Marcus, 1995 U.S. Dist. LEXIS 22931, at *11-12 (S.D. Fla. 1995) (33% of $10 million settlement); *see also Swift v. BancorpSouth Bank*, No. 1:10-cv-00090-GRJ, 2016 WL 11529613, at *13 (N.D. Fla. July 15, 2016) (awarding fees of 35%); *Waters v. Int'l Precious MetalsCorp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

Class Counsel's fee request also falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring). Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 8.    The Expense Request Is Appropriate.

Class Counsel also request reimbursement for a total of $10,910.49 in litigation expenses. Joint Decl. ¶37. This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action andthe Settlement. *Id.* Specifically, these costs and expenses consist of filing fees, process server fees, pro hac vice applications, mediator's fees and expenses, and legal research. *Id.* These out- of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action. *Id.*

## V.    CONCLUSION

The Settlement with Dollar General securing $1,800,000.00 in cash compensation for the benefit ofthe Settlement Class represents an excellent result given the obstacles confronted in this Action. The Settlement more than satisfies the fairness, reasonableness and adequacy standard of Rule 23(e)(2), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's application for fees and expenses is reasonable under all the circumstances. The request satisfies the guidelines of *Camden I* given the results achieved, the notable litigation risks, the extremely complicated nature of the factual and legal issues, and the time, effort and skill required   to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the

Settlement Class pursuant to Rule 23(a), 23(b)(3), and 23(e); (3) appoint David Levy as Named Class Representative; (4) appoint as Class Counsel the undersigned law firms and attorneys; (5) approve the requested Class Representative Service Award in the amount of $5,000.00 (or, alternatively, as compensation in exchange for the general release from Plaintiff to Dollar General); (6) award Class Counsel attorneys' fees in the amount of $600,000.00, and the reimbursement of expenses in the amount of $10,910.49; and (7) enter Final Judgment dismissing the Action with prejudice. A proposed Final Approval Order is attached hereto as ***Exhibit D***.

Dated: September 20, 2021

By: */s/ Rachel Dapeer*

**DAPEER LAW, P.A.**
Rachel Dapeer
rachel@dapeer.com
Florida Bar No. 108039
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: 305-610-5223

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (*Pro Hac Vice*)
mweiner@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320