**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID LEVY, individually and on
behalf of all others similarly
situated,

    Plaintiff,

v.                                                         Case No. 3:20-cv-1037-TJC-MCR

DOLGENCORP, LLC, DOLLAR
GENERAL CORP., and DG
RETAIL, LLC,

    Defendants.

## FINAL APPROVAL ORDER

This case is before the Court on Plaintiff's[1] Unopposed Motion for Final Approval of Class Settlement and Application for Class Representative Service Award, Attorneys' Fees and Expenses ("Motion") (Doc. 35), filed on September 20, 2021, seeking final approval of the Settlement in this Action. The Court held a Final Approval Hearing on October 28, 2021, the record of which is incorporated by reference.[2]

---

[1] The capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement. (Doc. 35-2).

[2] The Final Approval Hearing was conducted in a hybrid format, with counsel attending via telephone but in open court to ensure that any objectors to the Settlement could attend and be heard. (See Doc. 37). No objectors attended.

On May 19, 2021, the Court entered a Preliminary Approval Order granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (Doc. 29). Plaintiff now asserts that the parties have complied with the requirements of the Preliminary Approval Order and requests that the Court give final approval to the terms of the Settlement as set forth in the parties' Settlement Agreement (Doc. 35-2).

In support of the Motion, Plaintiff filed the Joint Declaration of Class Counsel, Melissa Weiner, Rachel Dapeer, Scott Edelsberg, and Andrew Shamis (Doc. 35-3), and the Declaration of the Settlement Administrator, Gina M. Intrepido-Bowden of JND Legal Administration (Doc. 35-4), to enable the Court to evaluate the fairness, adequacy, and reasonableness of the Settlement Agreement (Doc. 35-2), as well as the reasonableness of the applications for a Class Representative Service Award and attorneys' fees and expenses to Class Counsel. Plaintiff also filed a Supplemental Declaration from Gina M. Intrepido-Bowden Regarding Administration and Notice Plan. (Doc. 36-1). Following Notice to the Settlement Class, only one Settlement Class member opted-out, and no objections were filed. Id. at 3. At the October 28, 2021 hearing, there were no objections to the Settlement by any class member.

After consideration of the Motion and the presentations of the Parties, the Court finds that Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Application for Class Representative Service Award, Attorneys'

2

Fees and Expenses (Doc. 35) is due to be granted and the proposed settlement is to be approved to the extent and for the reasons set forth below.

## **Background**

This lawsuit is "one of many novel class actions that arose after the U.S. Food and Drug Administration ("FDA") directed that infants' liquid acetaminophen must be sold in the exact same formulation as children's liquid acetaminophen in response to consumer confusion about the previous differences in concentrations which led to accidental overdoses." (Doc. 35 at 1). Plaintiff alleges that Defendants charge three times more for infant medication (DG Health Infants' Acetaminophen) than for children's medication (DG Health Children's Acetaminophen) and label the infant medication to imply that it is specifically formulated for infants when, in fact, it is not. Id. at 1–2.[3]

---

[3] Plaintiff explains the alleged violations in more detail in the Motion for Final Approval:

> Dollar General sold its Infants' Pain & Fever Acetaminophen ("Infants' or Infants' Products), a private label product, alongside brand-name acetaminophen products such as Infants' Tylenol and Children's Tylenol. Ten years ago, the Infants' Products was only available with a concentration of 80 mg/mL of acetaminophen, and the Children's Pain & Fever Acetaminophen ("Children's" and together with Infants', the "Products") was only available with a concentration of 160 mg/5 mL of acetaminophen. In May 2011, after several well-publicized child deaths, manufacturers (including Dollar General) changed Infants' to 160 mg/5 mL, the same concentration as Children's, to avoid confusion and possible overdose. Since then, Plaintiff alleges that the only differences in liquid acetaminophen marketed for infants versus children have been the price and dosing instrument included with the products

3

The Settlement includes both injunctive relief and a common fund of $1,800,000, intended to cover class members' approved claims, Settlement administration expenses, attorneys' fees, and a service award to the class representative. Id. at 2. The parties reached the Settlement only after several months of mediation and follow-up efforts with the Honorable Morton Denlow, a retired judge from the Northern District of Illinois. Id. at 4. As part of the Settlement, class members were notified through an extensive publication, mail, and email Notice Program as described in the Preliminary Approval Order (Doc. 29), which informed class members they must timely file a valid Claim Form to receive a distribution payment payable by check. Id. at 6. Defendants agreed to pay $1.70 per product to each class member who timely filed a Claim

---

(i.e. Defendants' Infants' Products come with a syringe while the Children's Products come with a plastic cup). Both of the Products contain the same concentration of acetaminophen and are interchangeable according to Plaintiff. As such, Plaintiff alleges that both Products are suitable for infants and children. Plaintiff sued Dollar General for allegedly marketing the Infants' Product as indicating to reasonable consumers that it is specially formulated for infants and charging a price premium— up to three times as much per ounce—despite the fact that the Infants' Product contains the same active ingredient and formulation (i.e. 160 mg per 5 mL of acetaminophen) that is contained in a bottle of Defendants' Children's Products. Plaintiff sued Dollar General for such premiums, asserting claims for Florida's consumer protection statutes, as well as claims for breach of the Magnuson-Moss Warranty Act and unjust enrichment.

(Doc. 35 at 3–4) (emphasis in original).

Form. Id. at 7. The Settlement Agreement contemplated that class members would receive a maximum of $5.10 without proof of purchase or $1.70 per product for all claims submitted with proof of purchase.[4] Id.

Additionally, as injunctive relief, Defendants have agreed not to sell the DG Health Infants' Acetaminophen unless the label specifically says that it contains the same concentration of liquid acetaminophen as DG Health Children's Acetaminophen. Id. Defendants have agreed to adhere to this restriction beginning no later than 360 days following Injunctive Relief Effective Date, or when the Settlement becomes final. Id.

The Settlement Administrator avers that it estimates having received a total of 28,109 potentially valid claims representing 193,074 products. (Doc. 36-1 at 4). The Settlement Administrator received only one timely and valid request for exclusion and is not aware of any objections. Id. at 2–3.

## Final Approval of Settlement

The Court has jurisdiction over the subject matter of this Action, the Settlement Class, and over individuals and entities undertaking affirmative obligations under the Settlement.

---

[4] At the Final Approval Hearing, Class Counsel reported that there will be an increase in payments to class members due to the number of claims received and the need to exhaust the Settlement Fund. (See Doc. 38). According to Class Counsel, the increase is likely to be $2.62 per product such that claimants will receive $4.32, and those who claimed three products (the maximum without proof of purchase) will receive $12.96. Id.

5

The Court hereby approves the Settlement set forth in this Final Approval Order and finds that the Settlement is fair, adequate, and reasonable, and in compliance with all applicable requirements of Federal Rule of Civil Procedure 23 and the United States Constitution (including the Due Process Clause), and all other applicable law, including the six factors set forth in Bennett v. Behring Corporation, 737 F.2d 982, 986 (11th Cir. 1984).[5] No

---

[5] The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, adequacy, and reasonableness of a class action settlement under Rule 23(e):

> (1) [T]he likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). In addition, effective December 1, 2018, Rule 23 itself was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

> (A) [T]he class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and

objections to the Settlement is an indication that the Settlement Class Members support the Settlement. (See Doc. 36-1 at 3). The Court concludes that the Settlement provides a substantial recovery for the Settlement Class Members and is an appropriate result under the circumstances and challenges presented by the lawsuit; thus, the Court directs the Parties and their counsel to implement and consummate the Settlement in accordance with the terms and conditions of the Settlement Agreement.

## **Certification of the Settlement Class**

Pursuant to Federal Rule of Civil Procedure 23, the Settlement Class consists of:

> All individuals in the United States who purchased DG Health Infants' Acetaminophen, from September 15, 2016 to June 6, 2021, for personal or household use. Specifically excluded from the Class are: (a) Defendants; (b) the officers, directors, or employees of Defendants and their immediate family members; (c) any entity in which Defendants have a controlling interest; (d) any affiliate, legal representative, heir, or assign of Defendants; (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the DG Health Infants' Acetaminophen for the purpose of resale or for use in a business setting.

---

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

7

The Court finds that the Settlement Class, as previously provisionally certified, satisfies all the requirements contained in Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law as more fully set forth in the Court's Preliminary Approval Order (Doc. 29).

As such, the Court finds, for settlement purposes only, that: (a) the Settlement Class as defined is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) Plaintiff's claims are typical of the claims of the Settlement Class; (d) the Named Class Representative and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members; (e) Plaintiff alleges that Defendants have acted on grounds that apply generally to the class; (f) the questions of law or fact common to the Settlement Class predominate over the questions affecting only individual Settlement Class Members; and (g) certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of the controversy.

### **Dismissal, Release, and Notice**

No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court. (Docs. 36-1 at 2; 6). Thus, in a separate Judgment, the Court shall dismiss this Action on the merits and with prejudice

as though after trial and a final adjudication of the facts and the law as to all Settlement Class Members' Released Claims.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendants from claims related to the subject matter of the Action.

The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process. Thus, Settlement Class Members shall be entitled to receive their portion of the Claim Fund, in accordance with the procedures set forth in the Agreement.

Having found that the Settlement Class Members have been properly certified and received proper Notice under the Notice Program, all Settlement Class Members, other than the one Settlement Class Member who opted-out of the Settlement, shall be barred and enjoined from (a) further litigation in this case and (b) filing or taking any action directly or indirectly to commence, prosecute, pursue, or participate on an individual or class or collective action basis any action, claim, or proceeding against Defendants in any forum in which

9

any of the claims released in the Agreement are asserted or which in any way would prevent any such claims from being extinguished.

All Settlement Class Members who have not opted-out of the Settlement shall be bound by all determinations and judgments in this Action concerning the Agreement whether favorable or unfavorable to the Settlement Class Member.

## **Attorneys' Fees and Service Award**

Any request for attorneys' fees as a percentage of a common fund must be appropriate and reasonable under the factors set forth in Camden I Condominium Association v. Dunkle, 946 F.2d 768 (11th Cir. 1991).[6] Here, the

---

[6] In Camden I Condominium Association, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991), the Eleventh Circuit instructed that the percentage approach should be used in common fund cases, while the lodestar approach should be used for statutory fee-shifting awards. This is a common fund case; thus, the percentage method applies. The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

Camden I, 946 F.2d at 772 n.3 (quoting Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 717–19 (5th Cir. 1974)). Most cases entail additional factors unique to the individual case, and district courts "should articulate specific

10

Settlement consists of a $1.8 million common fund for Class Members' claims, the attorneys' fees award, settlement administration, and any service award. (Doc. 35 at 2). Class Counsel claim they are "entitled to request attorneys' fees of up to 33.33% of the Claim Fund, plus reimbursement of litigation costs." Id. at 9. They request an attorneys' fees award of $600,000, which is 33.3 percent of the $1.8 million fund. Id. When applying the percentage method in a common fund settlement, district courts consider the Johnson factors to determine whether the fees request is reasonable. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). In the Eleventh Circuit, the "benchmark range" or typical award is between twenty and thirty percent. See, e.g., In re Home Depot Inc., 931 F.3d 1065, 1076 (11th Cir. 2019).

The Court sees no reason to deviate from the benchmark range in this case. However, the Court is persuaded by the substantial results obtained both for class members through claims relief and for future consumer protection through injunctive relief, as well as by the high level of skill Class Counsel exhibited through detailed briefing and thorough explanations at hearings, that an award on the high end of the benchmark range is appropriate. Class Counsel shall receive $540,000 in attorneys' fees, or thirty percent of the $1.8 million fund, in addition to reimbursement of expenses totaling $10,910.49. This award

---

reasons for selecting the percentage upon which the attorneys' fees award is based." Id. at 775.

11

accurately reflects the contingency fees that are commonly received by attorneys in the Middle District of Florida and in the Eleventh Circuit and that are within the range of reasonableness discussed in Camden I, 946 F.2d at 774–75. The attorneys' fees and costs shall be payable out of the Settlement Fund.

The $60,000 difference between the $600,000 that Class Counsel requests and the $540,000 that it will receive shall inure to the benefit of the class through corresponding increased award amounts to each claimant on a per claim (not pro rata) basis.[7] The settlement administrator should determine the corresponding increase in awards and direct funds to class members accordingly.

Class Counsel seeks a $5,000 Service Award for the Named Class Representative. (Doc. 35 at 27). The Court declines to grant a service award to the class representative in the wake of Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020). However, the Eleventh Circuit has yet to issue the mandate in Johnson, and a petition for en banc rehearing remains pending. Thus, as Class Counsel requests (Doc. 35 at 29 n.4), the Court will retain jurisdiction to allow Class Counsel to renew the request for a service award in the event that Johnson is reversed. See Metzler v. Medical Mgmt. Int'l, Inc., No. 8:19-cv-2289-VMC-CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020)

---

[7] At the October 28, 2021 hearing, Class Counsel agreed that any adjustment to the attorneys' fees would inure to the benefit of the Class.

(retaining jurisdiction for the "limited purpose of revisiting the denial of service awards" if Johnson is reversed).

## **Further Matters**

Without affecting the finality of the Final Approval Order in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement; (b) this Action until the judgment contemplated herein has become effective and each and every act agreed to be performed by the Parties has been performed; and (c) the Parties and all parties to the Settlement Agreement for the purpose of enforcing and administering the Agreement.

In the event that the Settlement does not become effective in accordance with its terms, then the judgment contemplated herein shall be rendered null and void and be vacated and the Agreement and all orders entered in connection therewith shall be rendered null and void, the Settlement Class shall be decertified, all of Defendants' obligations under the Settlement shall cease to be of any force and effect; the amounts in the Claim Fund shall be returned to Defendants and Plaintiff's Complaint (Doc. 1) shall be reinstated as it existed prior to the making of the Agreement. In that case, all communications, documents, filings, negotiations, and other actions taken by the Parties to negotiate and pursue a settlement through the Settlement Agreement shall be considered confidential settlement communications which cannot be used in evidence by any Party against another Party.


Nothing in this Final Approval Order or the Agreement shall be construed as an admission or concession by any Party. Defendants have denied all of Plaintiff's allegations and continue to deny such allegations. Plaintiff continues to believe his allegations have merit. The Settlement and this resulting Final Approval Order represent a compromise of disputed allegations.

Except as expressly provided herein, each Party shall bear its own fees and costs. Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter the Final Judgment in a separate document and direct the Clerk of this Court to close the case.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Application for Class Representative Service Award, Attorneys' Fees and Expenses (Doc. 35) is **GRANTED in part**, **DENIED in part**, and **DEFERRED in part**, as stated herein;

2. The Settlement Class is finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e);

3. Plaintiff David Levy is appointed as Named Class Representative, and Melissa Weiner, Esq., Rachel Dapeer, Esq., Scott Edelsberg, Esq., and Andrew Shamis, Esq. are appointed as Class Counsel;

4. Class Counsel shall be awarded attorneys' fees in the amount of $540,000.00, plus litigation expenses in the amount of $10,910.49;

5. The issue of the Class Representative Service Award is deferred for the reasons stated herein, and Defendants shall deposit $5,000 into the registry of the Court no later than **December 22, 2021**. The parties should notify the Court once Johnson is final.

6. Class Counsel, Plaintiff, and Defendants are directed to implement and consummate the Settlement Agreement pursuant to its terms and conditions, as adjusted herein;

7. The Court retains continuing jurisdiction over Plaintiff, the Settlement Class Members, and Defendants to implement, administer, consummate, and enforce the Settlement Agreement and this Final Approval Order;

8. The Court will separately enter a final judgment dismissing this action with prejudice and directing the Clerk to close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 2nd day of December, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

tnm
Copies:

Counsel of record